REPRODUCED AT THE NATIONAL ARCHIVES

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Donnell Hurt, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 96-1908 (GK) |
| | ) | |
| District of Columbia, et al., | ) | **FILED** |
| | ) | |
| Defendants. | ) | JUN 2 3 1997 |

**NANCY MAYER-WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

### ORDER

For the reasons set forth in a memorandum opinion issued today, it is this 20th day of June, 1997,

**ORDERED** that Plaintiff's Motion for Summary Judgment [16] is **DENIED**; and it is

**FURTHER ORDERED** that Defendants' Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment [17] is **GRANTED**; and it is

**FURTHER ORDERED** that this case is hereby **DISMISSED** with prejudice. This is a final order from which Plaintiff has 30 days to appeal. Fed. R. App. P. 4(a)(1).

GLADYS KESSLER
United States District Judge



15/N

REPRODUCED AT THE NATIONAL ARCHIVES

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Donnell Hurt,                                )
                                             )
      Plaintiff,                            )
                                             )
v.                                           )     Civil Action No. 96-1908 (GK)
                                             )
District of Columbia, et al.,                )
                                             )
      Defendants.                           )

**FILED**

**JUN 2 3 1997**

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION

Plaintiff, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against the District of Columbia and four employees of its Department of Corrections for alleged constitutional violations arising out of a body cavity search. Plaintiff seeks compensatory and punitive damages. Plaintiff moved for summary judgment in which he restated the allegations and arguments contained in his complaint. Defendants responded by filing a motion to dismiss or, in the alternative, a motion for summary judgment. In his response to Defendants' motion, Plaintiff for the first time articulates the constitutional violations he allegedly suffered as a result of the body cavity search: the right to be free of unreasonable searches and seizures under the Fourth Amendment, the rights of due process and equal protection afforded by the Fourteenth Amendment, and the right to be free of cruel and unusual punishment under the Eighth Amendment.

## I.     Background

Donnell Hurt is an inmate at the District of Columbia Department of Correction's

REPRODUCED AT THE NATIONAL ARCHIVES

security facility in Lorton, Virginia. In his complaint, he makes the following

allegations: On the afternoon of June 30, 1996, Mr. Hurt was sleeping in his cell when he was

awakened by an inmate in an adjacent cell, Xavier Dunmore, who had been stabbed and was

bleeding. Together they called for a guard to take Mr. Dunmore for medical treatment.

In the investigation that immediately followed the stabbing, Defendants Brown, Dozier and

Lampkin -- correctional officials at the maximum security facility -- conducted searches of the

cells on either side of the victim's. Mr. Hurt was handcuffed behind his back and led out onto

the tier in front of his cell. Defendant Lampkin then ordered Defendant Brown to conduct a body

cavity search of the handcuffed Mr. Hurt. His complaint describes the search as follows:

> Officer N. Brown under Lieutenant Lampkins orders grabbed Plaintiff gym
> and boxer shorts and briefs, and pulled them down to Plaintiff ankles
> exposing his private parts (buttocks, penis, etc.) out on the tier. While
> grabbing Plaintiff briefs, Officer N. Brown was touching Plaintiff buttocks.
> Plaintiff was completely naked from the waist down while Lieutenant
> Lampkins, Officer West, an employee of the D.C. Department of
> Corrections Maximum Security Facility, and a female officer controlling
> lock box, and inmates from their cells were watching.

> Officer N. Brown while searching Plaintiff gym and boxer shorts
> and briefs, from a kneeling position, was visually looking up at Plaintiff
> buttocks. Plaintiff had ask Lieutenant Lampkin, "was this type of
> mistreatment necessary"? Lieutenant Lampkins reply, "we do what we
> want."

Complaint, Facts ¶¶ 3-4.

Mr. Hurt alleges that Defendants had no reason to conduct a body cavity search of him,

that he obeyed all of Defendants' orders while they conducted the search, and that he had done

nothing to deserve Defendants' treatment of him. He states that an inmate in the other adjacent

cell was not disrobed and was only subjected to a "pat" search rather than a body cavity search.

In addition, Defendant Dozier conducted a search of Mr. Hurt's cell in which "personal property was thrown on the floor; clothes and legal items were thrown in disarray." Complaint, Facts ¶ 5.

Mr. Hurt filed two grievances regarding the body cavity search with Defendant Roach, who was then Warden of the maximum security facility, but received no response. Thereafter, he filed a sexual misconduct complaint with the Director of the Department of Corrections. A fact finding investigation was conducted by prison officials in which Mr. Hurt was allowed to testify and present witnesses. The fact finding committee investigating his complaint found no probable cause to believe that Defendants Lampkin, Brown or Dozier engaged in sexual misconduct.

During the fact finding investigation, Defendant Brown continued to work in the area of Mr. Hurt's cell and is alleged to have verbally abused Mr. Hurt and to have tampered with his food. Mr. Hurt also filed several grievances regarding Defendant Brown with Defendant Roach, but did not receive responses to these either. Defendant Brown filed a disciplinary report against Mr. Hurt alleging threatening conduct, which was dismissed when it was noted that a fact finding investigation into a sexual misconduct complaint was underway. Mr. Hurt contends that the disciplinary report was "bogus" and was filed in retaliation for his filing grievances against Defendant Brown. After dismissal of the disciplinary report, Defendant Brown was removed from work details in which he would come in contact with Mr. Hurt.

## II.    Discussion

Plaintiff contends that he is entitled to judgment as a matter of law based upon the undisputed allegations of his complaint and the exhibits and affidavits he has attached to his

motion. Defendants do not dispute the facts as alleged by Plaintiff, but argue that, even if true, he has failed to state a claim upon which relief can be granted under 42 U.S.C. § 1983. Defendants also argue that the District of Columbia cannot be held liable for the conduct of the individual Defendants who, in turn, are entitled to qualified immunity. In light of the dispositive nature of the defense of qualified immunity, given the facts presented in the complaint, that is the only issue the Court need address.

A.    Standard of Review on a Motion for Summary Judgment

Under Rule 56, Fed.R.Civ.P., summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. Rule 56(c) Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. See also Washington Post Co. v. United States Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. Laningham v. United States

REPRODUCED AT THE NATIONAL ARCHIVES

Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

### B.    Municipal Liability

A municipality cannot be held liable under 42 U.S.C. § 1983 based on the theory of respondeat superior. Monell v. New York City Dept.of Social Servs., 436 U.S. 658, 694 (1978). In order to prevail, Plaintiff must allege that the deprivation of his constitutional rights was caused by a policy, custom or practice of the District of Columbia, or that a single "municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Board of the County Comm'rs of Bryan County, Oklahoma v. Brown, 117 S. Ct. 1382, 1388, 1390 (1997). Here, Plaintiff fails to identify any policy of the District of Columbia or action by a municipal decision maker that violated his rights. On the contrary, Plaintiff acknowledges that there are a number of regulations designed to protect him from the violations he allegedly suffered. Therefore, Defendants' motion will be granted as it relates to Defendant District of Columbia.

### C.    Qualified Immunity of Defendants Lampkin, Brown and Dozier

The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for Plaintiff to prevail, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). To withstand a

tion for summary judgment on the grounds of qualified immunity, the Plaintiff must present

clear and convincing evidence of the defendant's unconstitutional motive. <u>Crawford-El v. Britton</u>,

93 F.3d 813, 817, 823 n.8 (D.C. Cir. 1996), <u>petition for cert. filed</u>, 65 U.S.L.W. 3416 (U.S.

Nov. 25, 1996) (No. 96-827); <u>Byrd v. Moseley</u>, 942 F. Supp. 642, 645-46 (D.D.C. 1996).

Plaintiff alleges violations of his Fourth, Fourteenth and Eighth Amendment rights as the

result of the body cavity and cell search. In addition, Plaintiff appears to be alleging that various

actions of Defendant Brown that post-date the search, including verbal abuse and tampering with

his food, also violated his constitutional rights. Because Plaintiff alleges that Defendant Brown

was removed from work details near his cell and that a disciplinary report he filed was dismissed,

he states no injury from those events that occurred after the search. Accordingly, the Court will

only consider Plaintiff's claims as they relate to the body cavity search and surrounding events.

### 1. Fourth Amendment

Defendants argue that as a prisoner, Plaintiff has no Fourth Amendment protection. In

<u>Hudson v. Palmer</u>, 468 U.S. 517, 527 (1984), the Supreme Court said "[a] right of privacy in

traditional Fourth Amendment terms is fundamentally incompatible with the close and continual

surveillance of inmates and their cells required to ensure institutional security and internal order."

While Defendants are correct regarding the search of Plaintiff's cell (the type of search at issue

in <u>Hudson</u>), several Circuit Courts of Appeal continue to afford prisoners a limited right to bodily

privacy. <u>See Somers v. Thurman</u>, 109 F.3d 614, 618-19 (9th Cir. 1997) (collecting cases). <u>But

see</u>, <u>Johnson v. Phelan</u>, 69 F.3d 144, 150 (7th Cir. 1995), <u>cert. denied</u>, 117 S. Ct. 506 (1996)

(prisoners have no privacy interests protected by the Fourth Amendment). The District of

Columbia Circuit has not directly addressed the issue. To the extent Plaintiff continues to enjoy

any bodily privacy right protected by the Fourth Amendment under <u>Hudson</u>, the contours of that right are extremely limited and not at all clear for purposes of qualified immunity. <u>Somers</u>, 109 F.3d at 622.

Even in those circuits affording prisoners such a right, visual body cavity searches similar to Plaintiff's have been upheld as reasonable under the Fourth Amendment. <u>See</u> <u>Elliott v. Lynn</u>, 38 F.3d 188, 191-92 (5th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 1976 (1995) (body cavity search of all prisoners in one room in view of each other, several guards and three bystanders was not unreasonable in light of exigent circumstances); <u>Thompson v. Souza</u>, 111 F.3d 694 (9th Cir. 1997) (visual body cavity search on tier just outside prisoner's cell in view of other inmates and guards found reasonable); <u>Michenfelder v. Sumner</u>, 860 F.2d 328 (9th Cir. 1988) (routine visual body cavity searches of male inmates performed within view of female inmates did not violate Fourth or Eighth Amendments). In light of these cases, and the specific facts of this case where Defendants were investigating a stabbing, the visual body cavity search conducted on Plaintiff was not so unreasonable as to put Defendants on notice that their conduct clearly violated whatever Fourth Amendment rights prisoners retain.

2.    <u>Fourteenth Amendment</u>

To state a claim for violation of his due process rights, Plaintiff must identify a protected liberty interest that has been denied. <u>Sandin v. Conner</u>, 115 S.Ct. 2293, 2297 (1995). Plaintiff argues that departmental regulations detailing the manner in which visual body cavity searches are to be conducted create a liberty interest in being free of searches violating those regulations. Under certain circumstances States may create liberty interests protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which . . . imposes

- 7 -

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."
Sandin, 115 S.Ct. at 2300 (citations omitted). Given the realities of life in any prison, and in
particular when a prisoner has been relegated to maximum security, especially at Lorton, the
Court is constrained to conclude that a visual (as opposed to a digital) body cavity search of
Plaintiff did not impose an "atypical and significant hardship" on him in relation to the ordinary
incidents of life in a maximum security prison. As such, the Departmental Order outlining the
recommended procedures for conducting a proper visual body cavity search did not create a
liberty interest sufficient to sustain a due process claim.

Plaintiff's allegation of unequal treatment similarly fails to state a violation of his equal
protection rights because he does not allege that such unequal treatment was the result of
intentional or purposeful discrimination. See Brandon v. District of Columbia Bd. of Parole, 823
F.2d 644, 650-51 (D.C. Cir. 1987). Even if such allegations were present, in the absence of
issues concerning fundamental rights or suspect classifications, the treatment of an inmate will not
violate the equal protection clause if it bears a rational relationship to a legitimate state interest.
See James-Bey v. Freeman, 638 F. Supp. 758 (D.D.C. 1986) (transfer of prisoner to maximum
security facility for role in general strike served legitimate state interest). Body cavity searches
conducted in the course of a stabbing investigation serve a legitimate penological interest.

3.     Eighth Amendment

To support his claim under the Eighth Amendment, Plaintiff must establish both that the
body cavity search was objectively cruel and unusual and that Defendants' intent in conducting
the search was for the "wanton infliction of pain". Farmer v. Brennan, 511 U.S. 825, 834
(1994); Pryor-El v. Kelly, 892 F. Supp. 261, 266 (D.D.C. 1995). The objective standard of the

- 8 -

REPRODUCED AT THE NATIONAL ARCHIVES

Eighth Amendment is not subject to precise description, but "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958) (plurality opinion)). Although body cavity searches have been upheld by various courts, the courts have expressed both concern and caution. See Bell v. Wolfish, 441 U.S. 520, 558 (1979) ("Admittedly, this practice [of routine body cavity searches] instinctively gives us the most pause."); Id., at 563 (Powell, J., dissenting as to opinion upholding constitutionality of routine body cavity searches "[i]n view of the serious intrusion on one's privacy occasioned by such a search"). Defendants' suggestion that a visual body cavity search can never, as a matter of law, be conducted in a manner which imposes cruel and unusual punishment is plainly wrong. See Meriwether v. Faulkner, 821 F.2d 408, 418 (7th Cir.), cert. denied, 484 U.S. 935 (1987) (plaintiff's allegations that she was regularly forced to strip before guards and other inmates stated Eighth Amendment claim).

The crucial issue for Plaintiff's Eighth Amendment claim, therefore, is whether Defendants' conduct was wanton. When prison guards are accused of using excessive physical force based upon decisions made "in haste, under pressure, and frequently without the luxury of a second chance," wantonness consists of acting "maliciously and sadistically for the very purpose of causing harm." Farmer, 511 U.S. at 835 (quoting Hudson v. McMillian, 503 U.S. 1, 5, 9 (1992) (internal quotation marks and citations omitted)). See also Whitley v. Albers, 475 U.S. 312, 320-21 (1986). Thus, in order to survive a motion for summary judgment on the basis of qualified immunity, Plaintiff must present clear and convincing evidence that Defendants acted maliciously and sadistically with the very purpose of causing harm.

Plaintiff admits that the search was conducted during the investigation that immediately followed the discovery of a stabbed inmate. Plaintiff argues that because he was locked in his cell at the time of the stabbing, he could not have been reasonably suspected of being involved. Prison officials do not need probable cause to justify a visual body cavity search. Bell v. Wolfish, 441 U.S. 520, 560 (1979). Although the involvement of Plaintiff in the actual stabbing seems unlikely, the penological value of body cavity searches for weapons and contraband is so well recognized, see Id., at 559; Del Raine v. Williford, 32 F.3d 1024, 1039 n.5 (7th Cir. 1994) (collecting cases), that the body cavity search under these circumstances can not be said to constitute clear and convincing evidence of Defendants' intent to harm.[1]

Plaintiff notes that another inmate in an adjoining cell was only subjected to a pat search and argues that this fact and the apparent availability of a less intrusive means of searching for weapons demonstrates that the body cavity search was conducted for an improper motive. Although the Court does not know what other facts Defendants may have relied upon in deciding to conduct a pat search on one inmate and a body cavity search on another,[2] the mere fact that Plaintiff was treated differently than another inmate does not constitute clear and convincing evidence of an improper motive.

Finally, the statement by Defendant Lampkin that "we do what we want" in response to Plaintiff's question does not clearly express a desire to harm. While the statement is inappropriate

---

[1]     The Court would note, again, that this was a visual, not a digital, search, which seems to have been conducted speedily, and was not accompanied by any violent or aggressive behavior by Defendants.

[2]     For example, Defendants may have relied on knowledge of Plaintiff's institutional behavior or history of disciplinary reports to justify differing treatment.

REPRODUCED AT THE NATIONAL ARCHIVES

and may well have been made to intimidate an inmate into compliance, it does not overcome the

presumption that the actions of Defendant Lampkin served a legitimate penological purpose.

Accordingly, the Defendants' motion will be granted as it relates to Defendants Lampkin, Brown

and Dozier.


      C.    <u>Defendant Roach</u>

Defendants argue that Plaintiff's complaint contains no specific allegations of wrongdoing

to support an action against Defendant Roach.  Plaintiff attempts to cure this omission in his

response by claiming that Defendant Roach intentionally neglected his "duty and responsibility

to respond to [Plaintiff's] grievances or complaints against prison officers [which] violated his

right to due process of law".  Plaintiff's Response in Opposition, at 12.  As discussed above,

Plaintiff has not suffered the denial of any liberty interest cognizable under the due process clause.

As such, Defendant Roach's failure to respond to Plaintiff's grievances could not have deprived

him of any due process rights.  <u>See</u> <u>Brandon</u>, 823 F.2d at 648 (denying constitutionally protected

liberty interest in the procedures used to conduct parole rehearing as "analytically indefensible").

Defendants' motion will be granted as it relates to Defendant Roach.


**III.**    **Conclusion**

Taken as a whole and liberally construed, Plaintiff's allegations and supporting evidence

could be read as stating a cause of action for violation of his Fourth and Eighth Amendment rights

to be free from unreasonable body cavity searches conducted only to punish.  However, in the

absence of clear and convincing evidence to support Plaintiff's conclusory allegations, this Court

REPRODUCED AT THE NATIONAL ARCHIVES

ust rule in favor of Defendants at the summary judgment stage on the grounds of qualified

mmunity.  Plaintiff has offered no allegations or evidence to support either municipal liability or

individual liability of Defendant Roach.


An appropriate order accompanies this Memorandum Opinion.


June 20, 1997
Date

Gladys Kessler
United States District Judge


**Copies to:**

Donnell Hurt                          William R. Morel, Esq.
DCDC # 191788                         Assistant Corporation Counsel
Maximum Security Facility             Office of the Corporation Counsel
P.O. Box 5200                         441 Fourth Street, N.W.
Lorton, VA 22199                      Sixth Floor South
                                      Washington, D.C.  20001

Plaintiff *pro se*

                                      Counsel for Defendants


- 12 -